# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 21, 2009

## STATE OF TENNESSEE v. DARRELL TYWON LOCKRIDGE and CHRISTOPHER ALLEN TURNER

### Appeal from the Criminal Court for Davidson County
### No. 2006-C-2626    Steve Dozier, Judge

---

### No. M2008-01217-CCA-R3-CD - Filed February 24, 2010

---

Appellants, Darrell Tywon Lockridge and Christopher Allen Turner, were indicted by the Davidson County Grand Jury in July of 2006 for attempted especially aggravated robbery and attempted first degree murder. After a jury trial, Appellant Lockridge was convicted of attempted second degree murder and attempted especially aggravated robbery. Appellant Turner was found not guilty of attempted first degree murder but was convicted of attempted aggravated robbery. Appellant Lockridge was sentenced to an effective twenty-year sentence, and Appellant Turner received a nine-year sentence. Both Appellant Lockridge and Appellant Turner appeal their convictions and sentences. After a review of the record, we determine that the evidence is sufficient to support the convictions and that the trial court properly sentenced both Appellants. Accordingly, the judgments of the trial court are affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

David M. Hopkins, Nashville, Tennessee, for the appellant, Darrell Tywon Lockridge; and Michael A. Colavecchio, Nashville, Tennessee, for the appellant, Christopher Allen Turner.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Victor S. Johnson, District Attorney General, Amy Eisenbeck and Rachel Sobrero, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

On August 7, 2006, Sean Turner,[1] the victim, went to visit a friend named "Tree" in the Edgehill Homes area of Nashville. Sean Turner worked with Tree and went to his house at around 9:00 p.m. to play video games and gamble. Sometime after midnight, Sean Turner left his friend's house and walked toward his car. Sean Turner was leaving because he had to get up to go to work the next day and wanted to get home to his fiancee. Sean Turner was also out of money from gambling. He had approximately two dollars and ten cents in his pocket.

As he walked toward his car, he saw a group of young men standing around. Sean Turner got into his car and started the engine. As he was backing out of the parking space, he turned to look behind the car. At that time, he saw a flash and then saw Appellant Lockridge standing over him. Appellant Lockridge pointed a gun at Sean Turner and told him to "set it out, drop it off." The victim thought that Appellant Lockridge was robbing him based on Lockridge's statement. Appellant Lockridge ordered Sean Turner to put his car into park. Sean Turner attempted to tell Appellant Lockridge that he only had two dollars and ten cents in his pockets, but Appellant Lockridge ordered Sean Turner to get out of the car. The victim refused to get out of the car. Appellant Lockridge continued to point the gun at Sean Turner and nudged him in the left side with the gun while continuing to order him out of the car.

Sean Turner begged Appellant Lockridge not to shoot him. Appellant Lockridge insisted that the victim was lying about not having any money but would not allow the victim to reach into his pockets to prove it. Appellant Lockridge cursed at the victim and grabbed at the door handle. He was unable to open the door. Suddenly, Appellant Lockridge looked up as if he had heard something. Then, Appellant Lockridge stepped back and looked away. Sean Turner saw that as an opportunity to drive away. The victim heard a gunshot and immediately could not feel his legs. Sean Turner described his body as feeling "rocky" and claimed that he could not breathe. Appellant Lockridge disappeared.

Sean Turner was scared. He tried to leave but was unable to put his foot on the accelerator to drive away. The victim tried to get out of the car but was unable to move so he opened the car door and fell out of the car, screaming for help.

About ten minutes later, a man approached Sean Turner, who was still lying on the ground. The victim pleaded for help, but the man demanded to know what the victim was doing in the neighborhood. The man did not render assistance; he continued to talk to the victim and question him.

---

[1]Because Sean Turner and Appellant Christopher Allen Turner have the same last name, we will refer to Sean Turner by his full name or "the victim."

Then, Appellant Turner walked up to the victim, kicked him, and spit on him. Appellant Turner produced a gun and told the victim that he "ought to finish [him] off." Appellant Turner pulled the hammer of the gun back to shoot the victim. The other man that was present stopped Appellant Turner. Appellant Turner then went around to the passenger side of the victim's car and searched inside. Appellant Turner returned to where the victim was lying in the street and searched the victim's pockets. The two men then put Sean Turner back into his car. The victim promised not to come back. The victim somehow managed to press the accelerator with his hand, causing the car to roll into a fence. The victim fell out of the car again. Someone eventually saw that the victim was shot and injured and called the police.

As a result of the incident, the victim is paralyzed from the waist down. Appellants Lockridge and Turner were indicted by the Davidson County Grand Jury in July of 2006 for one count of attempted especially aggravated robbery and one count of attempted first degree murder. The victim identified both Appellant Turner and Appellant Lockridge at trial.

At the conclusion of a jury trial, Appellant Lockridge was convicted of attempted second degree murder and attempted especially aggravated robbery. The trial court ordered Appellant Lockridge to serve eleven years for the attempted second degree murder conviction and nine years for the attempted especially aggravated robbery conviction, to be served consecutively, for a total effective sentence of twenty years as a Range I, standard offender. Appellant Turner was found guilty of attempted aggravated robbery and not guilty of attempted first degree murder. Appellant Turner was sentenced to nine years as a Range II, multiple offender.

After the denial of a motion for new trial, both Appellant Turner and Appellant Lockridge seek a review of their convictions and sentences. Specifically, Appellants Turner and Lockridge challenge the sufficiency of the evidence and the length of their sentences.

*Analysis*
*Sufficiency of the Evidence*

On appeal, Appellant Lockridge contends that the evidence is insufficient to support his convictions for attempted second degree murder and attempted especially aggravated robbery. Specifically, he argues that there was no evidence that he "removed or attempted to remove anything from [the victim's] person or his automobile." Further, Appellant Lockridge argues that the victim's trial testimony was "conflicting." Appellant Turner argues on appeal that the evidence was insufficient to support his conviction for attempted aggravated robbery because the "State failed to prove that [Appellant Turner] was attempting to take any property belonging to the victim." The State asserts on appeal that the arguments of both Appellants are merely an "attack on the credibility of the State's witnesses" and that the evidence is sufficient to support the convictions.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all

-3-

conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from reweighing or reevaluating the evidence when considering the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

### A. Appellant Lockridge

### 1. Attempted Especially Aggravated Robbery

First, on appeal, Appellant Lockridge challenges his conviction for attempted especially aggravated robbery. When a defendant is charged with the attempted commission of a crime, there must be evidence that the defendant "[has acted] with the kind of culpability otherwise required for the offense" or "[has acted] with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; . . ." T.C.A. § 39-12-101(a)(1), (2). Criminal attempt also occurs when the defendant "[a]cts with the intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." T.C.A. § 39-12-101(a)(3).

Especially aggravated robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" that is accomplished with a deadly weapon and results in the victim suffering serious bodily injury. T.C.A. §§ 39-13-401(a), -403(a).

After a review of the evidence, we conclude that the evidence introduced at trial was sufficient to demonstrate that Appellant Lockridge committed the offense of attempted especially aggravated robbery. The victim testified at trial as to the events that occurred the evening that he was shot. He testified that Appellant Lockridge approached him as he was in his car, wielding a gun, and requesting that the victim "set it out." Appellant Lockridge tried to gain access to the inside of the victim's car and made demands of the victim while pointing a gun at him. The victim testified

-4-

that he tried to comply with Appellant Lockridge's demands and that he was scared. In fact, the victim stated that there was no doubt in his mind that he was being robbed. The facts support the conviction for attempted especially aggravated robbery.

## 2. *Attempted Second Degree Murder*

Next, Appellant Lockridge challenges the sufficiency of the evidence for his attempted second degree murder conviction. His attack on the conviction is based mostly on an attack of the credibility of the victim. Second degree murder is the knowing killing of another. T.C.A. § 39-13-210(a)(1). In order to convict Appellant Lockridge of attempted second degree murder, the State was required to prove that Appellant Lockridge acted with the intent to cause the knowing killing of another, believing his conduct would cause the result without further conduct on his part. T.C.A. §§ 39-12-101(a)(2), 39-13-210(a).

By challenging the inconsistencies in the victim's testimony, Appellant invites this Court to reassess the trial evidence and substitute our own inferences and credibility determinations for those of the jury. We reject the invitation, as we must, pursuant to our circumscribed standard of appellate review. A jury verdict approved by the trial court accredits the State's witnesses and resolves all conflicts in the evidence in the State's favor. *See State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

The testimony at trial showed that Appellant Lockridge pointed a gun at the victim's face while the victim begged Appellant Lockridge not to shoot him. When the victim tried to drive away, he heard a gunshot, was wounded, and immediately could not feel his legs. Further, the victim identified Appellant Lockridge as one of the perpetrators at trial. From the proof, the jury could have found that Appellant Lockridge's conduct was reasonably certain to cause the victim's death and that Appellant Lockridge intended to kill the victim based upon the use of a deadly weapon, his threats, and the seriousness of the wounds inflicted to the victim, who is now paralyzed from the waist down. *State v. Inlow*, 52 S.W.3d 101, 104-05 (Tenn. Crim. App. 2000); *State v. Elder*, 982 S.W.2d 871, 875-76 (Tenn. Crim. App. 1998). In other words, the proof offered at trial would be sufficient for the jury to convict Appellant Lockridge of the attempted second degree murder of the victim beyond a reasonable doubt. Appellant Lockridge is not entitled to relief on the basis of sufficiency of the evidence.

## *Appellant Turner*

Appellant Turner was convicted of attempted aggravated robbery. He argues on appeal that the evidence was insufficient to sustain the conviction. Aggravated robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear," that is either "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon; or [w]here the victim suffers serious bodily injury." T.C.A. §§ 39-13-401(a), -402(a).

According to the record on appeal, the victim testified at trial that, after he was shot, Appellant Turner approached him while he was lying on the ground next to his car. Appellant Turner pointed a gun at him and told him that he "ought to finish him off." Then, Appellant Turner searched the victim's pockets and looked inside his car. These facts are sufficient to show that Appellant Turner took a substantial step toward committing aggravated robbery and that he intended to commit the crime. The evidence is sufficient to support Appellant Turner's conviction. He is not entitled to relief on this issue.

*Sentencing*

Appellant Lockridge and Appellant Turner challenge their sentences on appeal. Both argue that the trial court erred in applying enhancement factors to increase their sentences above the minimum in the range. The State disagrees, arguing that the trial court "was entitled to impose sentences within the applicable range."

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). "[T]he presumption of correctness 'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). "If . . . the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." *Id.* at 345 (citing *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)). We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *Ashby*, 823 S.W.2d at 169.

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses, (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

When imposing the sentence within the appropriate sentencing range for the defendant:

[T]he court shall consider, but is not bound by, the following *advisory* sentencing guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c) (emphasis added). However, the weight given by the trial court to the mitigating and enhancement factors are left to the trial court's discretion and are not a basis for reversal by an appellate court of an imposed sentence. *Carter*, 254 S.W.3d at 345. "An appellate court is . . . bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Id.* at 346.

"The amended statute no longer imposes a presumptive sentence." *Carter*, 254 S.W.3d at 343. As a result of the amendments to the Sentencing Act, our appellate review of the weighing of the enhancement and mitigating factors was deleted when the factors became advisory, as opposed to binding, upon the trial court's sentencing decision. *Id.* at 344. Under current sentencing law, the trial court is nonetheless required to "consider" an advisory sentencing guideline that is relevant to the sentencing determination, including the application of enhancing and mitigating factors. *Id.* The trial court's weighing of various mitigating and enhancement factors is now left to the trial court's sound discretion. *Id.*

To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See id.* at 343; *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). If our review reflects that "the trial court appl[ied] inappropriate mitigating and/or enhancement factors or otherwise fail[ed] to follow the Sentencing Act, the presumption of correctness fails" and our review is de novo. *Carter*, 254 S.W.3d at 345.

*Appellant Lockridge*

Appellant Lockridge was convicted as a Range I, standard offender of attempted second degree murder and attempted especially aggravated robbery, both Class B felonies. *See* T.C.A. §§ 39-12-107(a), 39-13-210(c), 39-13-403(b) . For a Class B felony, Appellant Lockridge was subject to a sentence of "not less than eight (8) nor more than (12) years" for each conviction. T.C.A. § 40-35-112(a)(2). As noted, the trial court sentenced Appellant Lockridge to nine years for attempted second degree murder and eleven years for attempted especially aggravated robbery.

The trial court applied several enhancement factors. The trial court found that Appellant Lockridge allowed the victim to be treated with exceptional cruelty during the commission of the offense. *See* T.C.A. § 40-35-114(5). The trial court applied this factor to both convictions, noting that Appellant Lockridge attacked an unarmed victim without provocation and shot the victim while he begged for his life, leaving the victim to bleed in the street. Further, the trial court found that the personal injuries inflicted upon the victim were particularly great. *See* T.C.A. § 40-25-114(6). The trial court applied this factor to the attempted second degree murder conviction. Next, the trial court determined that Appellant Lockridge possessed or employed a firearm during the commission of the offense and applied this factor to the attempted second degree murder conviction. *See* T.C.A. § 40-35-114(9). The trial court also noted that Appellant Lockridge had two prior juvenile convictions that would have constituted felonies if committed by an adult. *See* T.C.A. § 40-35-114(16).

Appellant Lockridge complains that the trial court improperly determined that the victim was treated with exceptional cruelty or that the injuries suffered by the victim were particularly great. Further, Appellant Lockridge argues that there was no weapon found and that the victim stated he did not see who shot him. We disagree. The testimony in the record indicated that the victim was paralyzed from the waist down. Certainly permanent paralysis that prevents the victim from walking and using the lower half of his body is a "particularly great" injury. Moreover, the victim testified that he fell out of the car, was unable to move after he was shot, and Appellant Lockridge walked away. The proof supports the application of these enhancement factors. Finally, as stated above, the enhancement factors are advisory. The trial court properly followed the sentencing procedures. Appellant Lockridge is not entitled to relief from his sentences.

*Appellant Turner*

Appellant Turner was convicted as a Range II, multiple offender of attempted aggravated robbery, a Class C felony. T.C.A. § 39-12-107(a), 39-13-402(b). As a Range II, multiple offender convicted of a Class C felony, Appellant Turner was subject to a sentence in the range of six to ten years. T.C.A. § 40-35-112(a)(3). As noted, the trial court sentenced Appellant Turner to nine years for his conviction.

The trial court applied several enhancement factors, but Appellant Turner complains about the application of factor (6) and factor (11). The trial court found that the injuries inflicted on the victim were particularly great because the victim was permanently paralyzed. *See* T.C.A. § 40-35-114(6). The trial court also found that the felony resulted in serious bodily injury and the defendant has been previously convicted of a felony that resulted in death or serious bodily injury. *See* T.C.A. § 40-35-114(11). The trial court relied on the injuries suffered by the victim to support this enhancement factor, including the fact that Appellant Turner held a gun to the victim's face and threatened to kill him, coupled with Appellant Turner's prior conviction for attempted second degree murder. After a review of the record, we determine that the trial court properly applied these advisory enhancement factors to enhance Appellant Turner's sentence from six years to nine years. Even if the trial court had misapplied these two enhancement factors challenged by Appellant Turner, the trial court found that four additional enhancement factors applied to Appellant Turner

that were not challenged on appeal and would support the enhancement of Appellant Turner's sentence.[2]  Appellant Turner is not entitled to relief on this issue.

*Consecutive Sentencing*

Finally, Appellant Lockridge argues that the trial court improperly ordered him to serve his sentences consecutively.  Specifically, he contends that the trial court improperly determined that he was a dangerous offender.  The State disagrees.

Under Tennessee Code Annotated section 40-35-115(a), if a defendant is convicted of more than one offense, the trial court shall order the sentences to run either consecutively or concurrently. A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists.  This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that:

> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high; . . . .

T.C.A. § 40-35-115(b).  When imposing a consecutive sentence, a trial court should also consider general sentencing principles, which include whether or not the length of a sentence is justly deserved in relation to the seriousness of the offense.  *See State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002).  The imposition of consecutive sentencing is in the discretion of the trial court.  *See State v. Adams*, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997).

If the trial court rests its determination of consecutive sentencing on the basis of a defendant's status as a "dangerous offender," the court must make two additional findings, as required by *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995). *Imfeld*, 70 S.W.3d at 708.  First, the trial court must find that an extended sentence is necessary to protect the public from further criminal conduct by the defendant, and, second, it must find consecutive sentencing to be reasonably-related to the severity of the offenses. *Wilkerson*, 905 S.W.2d at 939.

The trial court herein considered the applicable statutes and case law, including the required *Wilkerson* factors, prior to making the following findings: the trial court found that consecutive sentencing was warranted, finding that the "defendant is a dangerous offender whose behavior indicated little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high."  The trial court relied on the fact that the victim was "severely injured" during the attack that was "severe." Further, Appellant Lockridge's "lack of acknowledgement [sic] for his actions further demonstrate his potential to commit additional crimes." He noted Appellant's statement that it was "just a big misunderstanding" without "acknowledging his violent actions, his

---

[2]The trial court also applied enhancement factors (1), (5), (13), and (16). *See* T.C.A. § 40-35-114.

use of a weapon, and his severe indifference to this victim were the cause of the life-altering injuries to this victim." Finally, the trial court found that the sentence was necessary to protect the public. From the record, we determine that the trial court correctly applied the *Wilkerson* factors on the record. The record does not preponderate against the imposition of consecutive sentencing. Appellant Lockridge is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JERRY L. SMITH, JUDGE